George **RADIN**, Appellant,

v.

Gertrude L. **GROMANN**, Appellee.

No. 6273.

District of Columbia Court of Appeals.

Argued May 15, 1972.

Decided Oct. 2, 1972.

John Wattawa, Washington, D. C., for appellant.

Martin S. Thaler, Washington, D. C., with whom William A. E. Doying, Washington, D. C., was on the brief, for appellee.

Before KELLY and PAIR, Associate Judges, and HOOD, Chief Judge, Retired.

HOOD, Chief Judge, Retired:

Appellant, a lawyer, sued appellee for $9,000, alleged to be the value of services rendered by him for her as her attorney and agent. Appellee generally denied the allegations of the complaint and as an "affirmative defense" alleged that the relationship between the parties was "social" and not "attorney-client", that the services rendered did not constitute "legal services", and that any services performed by appellant were performed solely as a volunteer.

Appellee was not present at trial and offered no evidence on her behalf. Appellant's testimony, corroborated to some extent by documents and other witnesses, in substance was as follows:

Appellant, an attorney since 1925, has practiced law in the District of Columbia since 1964, specializing in what he termed international law practice. He resided in a residential hotel and maintained his office at his home. Appellee, an elderly lady, lived in the same hotel with her still more elderly husband. She and appellant were not acquainted until in 1966 she called him, asked if he was a lawyer, and requested him to come to see her.

Appellant went to appellee's apartment and she introduced him to her husband who was in bad health. She told appellant she was worried about what would happen to her husband in the event she died before he did, and she wanted to have a trust agreement and will drawn, although she had already discussed that matter with a Florida lawyer. She also said there would

be numerous other matters on which she would need appellant's assistance and advice.

She brought up the question of his compensation. Their agreement on this subject, so he testified, was:

So, then, on that very occasion, she said to me, you see, "I realize that you are a lawyer and I know that lawyers must be paid." "And," she said, "here is what is in my mind. I have nobody in this world, Ralph and I. I do not want to part with cash that we have, securities, because I don't know how long we are going to live. But if you will agree to stand by me, help my husband and me, I will provide in my will ample sum to pay you." She added, "There was one other person only in this world that I feel obligated to, and that is Congressman Gross of Iowa. So, you two are to be then my legatees."

"I hope," she added, "that you will go with me under such conditions." I said to her, "Mrs. Gromann, what you are now asking me to do is quite understandable. We all are normal people in this condition in which you are, we all want to hold on to what we have unless we are forced, and so forth." So I said, "I'll be glad to help you with the understanding that I'll be one of your two legatees."

Appellee did not disclose the amount of property she owned and appellant made no inquiry regarding it. Later he gained the impression she had securities of a value of at least $100,000 in the possession of a local brokerage firm.

After a disagreement with and discharge of her Florida lawyer, appellee urged appellant to proceed with preparation of a trust agreement and a will. He prepared and submitted to her forms of both instruments, neither of which she ever executed. The proposed will left blanks for the names of the residuary legatees, although appellant expected that he and the Con-

gressman would be named. Later when the Congressman fell into disfavor with appellee, appellant thought he might be the sole legatee.

Until the latter part of 1969 appellant had "practically daily meetings" with appellee on various subjects, including a reported theft of valuables from her apartment and the sale of a house owned by her in Chevy Chase, Maryland. Much time was spent by appellant in connection with the care, health and nursing problems of appellee's husband who died in December of 1969. In November of 1969, following an argument regarding the husband's admission to a nursing home, appellant was notified that he was no longer appellee's lawyer.

According to appellant, after notification of his discharge, appellee told him he should render a bill. He answered that "our understanding was that I am one of your legatees and there is no bill for me to render." She replied, "I never said anything like that." This conversation terminated their relations.

Appellant estimated that his services for appellee consumed a minimum of 600 hours over the three-year period, and that at the "modest" rate of $15 per hour he was entitled to $9,000.

The trial court denied appellant any recovery. In so doing the court, in part, said:

> The status of the Plaintiff, vis a vis, the Defendant, accordingly, was that of a person acting in expectation that another would make him an object of testamentary bounty and not that of a professional man expecting fair compensation for work performed under the usual criteria established for determining a fair fee. . . .

The Court will not now reform this bizarre understanding into an implied contract arising out of a regularized professional relationship where compensation may be determined by assessing the value of legal work performed. This is particularly true when the task would require excising moments of work that could be truly characterized as legal from the pastiche of services which Plaintiff performed in the hope of receiving Defendant's largesse.

We hold it was error to deny appellant any compensation for services admittedly performed. The original agreement between the parties, bizarre as it may appear, was proposed by appellee. There is no evidence of any overreaching or undue influence on the part of appellant. He, perhaps foolishly, accepted her proposal, and then later she repudiated it. But the uncontradicted testimony is that when she engaged him she recognized he would be entitled to compensation for his services, and when she discharged him she again recognized his right to compensation by instructing him to bill her for his services.

It is undisputed that appellant spent a great amount of time on appellee's behalf. A good portion of the time was spent on matters not strictly legal in character, but it is not unusual for a client to consult with a lawyer on matters more personal than legal.

We do not suggest in any manner the amount of recovery that should be allowed. That is for the trial court which in determining the fair and reasonable value of the services may take into consideration all the circumstances surrounding the relationship of the parties, the nature of the services rendered, the results accomplished, and all other factors bearing on the value of the services performed. All we hold is that appellant is entitled to some compensation. The judgment will be reversed and a new trial ordered on the single issue of the amount of recovery.

Reversed for further proceedings consistent with this opinion.